COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: September 27, 2017
Date Decided: October 10, 2017

C. Barr Flinn, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Garrett B. Moritz, Esquire
Ross Aronstam & Moritz LLP
100 South West Street, Suite 400
Wilmington, DE 19801

Re:   *Pine River Master Fund Ltd. v. Amur Finance Company, Inc.*
      C.A. No. 2017-0145-JRS

Dear Counsel:

I have your correspondence regarding confusion over the scope of the September 13, 2017, Memorandum Opinion and Order ("the Opinion") in which the Court addressed, *inter alia*, the breach of Section 6.04 of the Credit Agreement relating to the payment of indemnities. The confusion arises out of the Court's less than precise definition of the parties, especially its use of "Amur" to refer collectively to Defendants, Amur Finance Company, Inc. ("AFC"), Amur Finance IV LLC ("Amur IV"), Amur Aviation LLC, PMC Aviation 2012-1 LLC, and Mostafiz ShahMohammed. This has created uncertainty as to which of the

Defendants the Court found to have breached the Credit Agreement. Plaintiffs, Pine River Master Fund Ltd. and Pine River Fixed Income Master Fund Ltd. (collectively, "Pine River"), argue that the Court must have intended to find both Amur IV and AFC in breach; Defendants argue that the finding of breach should extend only to AFC.[1]

---

[1] I confess that the Court did not focus in the Opinion on the distinction between AFC and Amur IV, as it did not appear in the briefs that the parties were focusing on that distinction, at least as to Section 6.04. *See, e.g.*, Pls.' Br. in Supp. of Mot. for Summ. J. at 4 ("[D]efendants still breached Section 6.04 by taking distributions from the Collections Account in February 2017."); Defs.' Br. in Opp'n of Mot. for Summ. J. at 29 ("Amur was left with no choice but to calculate the monthly distributions itself, using the calculation methodologies negotiated with Pine River and used by Amur consistently over the prior three-plus years."); *id.* at 29 ("Amur determined the monthly distribution itself, and Amur IV made the necessary February 2017 payments . . ."); *id.* at 34 ("Indemnification of Amur's legal expenses related to the Operative Agreements and the Loans is clear on the face of the Credit Agreement."); *id.* at 44 (Pine River also argues that the February 2017 payment made by Amur IV to satisfy AFC's indemnities was in breach of the Credit Agreement because it was made pursuant to an alleged 'Administrator Report' that Amur prepared when it was no longer serving as Administrative Agent."); *id.* at 47 ("Amur's failure to pay Pine River PIK Accrual would only constitute a breach . . . if PIK was 'due and payable,' which it was not . . ."); Pls.' Reply Br. at 7 ("Amur nevertheless violated the Credit Agreement by making the February 2017 Improper Distributions . . ."); *id.* at 34 ("Pine River respectfully requests that the Court enter summary judgment . . . declaring that Amur breached Section 6.04 . . .").

Count II of the original Complaint (upon which Pine River sought partial summary judgment) refers only to the conduct of AFC.[2] Nevertheless, Pine River argued in its motion for summary judgment as to Counts II and VI that both AFC and Amur IV breached Section 6.04.[3] In the Introduction of their Corrected Brief in Opposition to Plaintiffs' Motion for Summary Judgment and Opening Brief in Support of Defendants' Cross-Motion for Summary Judgment, Defendants appear to acquiesce in the notion that the Court could find Amur IV in breach of Section 6.04. Specifically, they state "there was no breach of section 6.04 of the Credit Agreement (or any other section) when Amur IV satisfied AFC's indemnities for legal expenses."[4] They reiterate this point later in that brief when they argue

---

[2] Original Compl. ¶¶ 85–87 ("A current and actual controversy exists between Pine River and AFC regarding their respective rights under the Credit Agreement . . . By taking for itself and its affiliates funds from the Collections Account that did not constitute expenses of the Administrative Agent 'payable under the Operative Agreements,' AFC repeatedly breached Section 6.04 of the Credit Agreement . . . By taking for itself and its affiliates funds from the Collections Account when it was not Administrative Agent, AFC also breached Section 6.04 of the Credit Agreement.").

[3] *See, e.g.*, Pls.' Br. in Supp. of Mot. for Summ. J. on Counts II and VI at 1–3.

[4] Defs.' Corrected Br. in Opp'n to Pls.' Mot. for Summ. J. and Opening Br. in Supp. of Defs.' Cross-Mot. for Summ. J. at 3.

"[t]he contract was not breached when Amur IV satisfied AFC's indemnities related to legal fees incurred in connection with the lawsuits."[5]

Despite the confusion in the briefing and Opinion, it is clear to me that the claim in Count II, as to which Pine River sought summary judgment, was a claim of breach directed against AFC, not AFC and Amur IV.[6] Pine River's Amended Complaint added allegations against Amur IV with respect to Section 6.04,[7] but the Court was advised in clear terms by the parties, in response to the Court's inquiry, that the Amended Complaint did not affect the claims or arguments to be addressed in the pending motion for summary judgment.[8] Based on the foregoing, I can clarify

---

[5] *Id.* at 4. *See also* Defs.' Reply Br. in Supp. of Defs.' Cross-Mot. for Summ. J. at 4 (stating that "[t]he payments made by Amur IV satisfied AFC's indemnities related to the Operating Company Lawsuits, brought by AFC in its capacity as Administrative Agent" and that "[t]he payments Amur IV made to satisfy indemnities for the legal expenses incurred enforcing Amur IV's rights in connection with the Operative Agreements were proper.").

[6] I note that Count V of the Original Complaint is directed against Amur IV and does make a passing reference to Section 6.04 in connection with the allegation that Amur IV was in breach of Section 5.07(d). Original Compl. ¶ 107. Pine River, however, did not seek summary judgment on Count V.

[7] Am. Compl. ¶¶ 201–06.

[8] *See* DI 118, August 30, 2017, Letter from Emily V. Burton, Esquire to The Honorable Joseph R. Slights, III ("Plaintiffs' Verified Supplemental and Amended Complaint, filed

that the Court's finding of breach of Section 6.04, and its grant of partial summary judgment in favor of Pine River, was directed at AFC only.

In any event, even if the Court were to determine that Count II did or should have included a claim of breach of Section 6.04 against Amur IV,[9] the Court's determination that no Event of Default occurred, at least as argued in the motion for summary judgment, would not be affected. Regardless of which of the Amur parties were (or could be) found to have breached Section 6.04, the fact would remain, at least in the Court's view, that the improper payment of expenses or indemnities did

---

on August 18, 2017 (the 'Amended Complaint'), does not affect the submitted cross-motions for summary judgment on Counts II and VI of Plaintiffs' original complaint, which were argued on July 10, 2017 (the 'Cross Motions,' Dkt. Nos. 44, 76). Because the amendments to the Amended Complaint are not relevant to the Cross Motions, and the allegations upon which the Cross Motions were based remain in the Amended Complaint, the Court need not address the Amended Complaint when deciding the Cross Motions.").

[9] It is not clear to me how that claim could be justified given the clear terms of Section 6.04 that impose obligations on the Administrative Agent, not the Borrower. *See* Credit Agreement at § 6.04 ("on every Payment Date, the Available Collections will be distributed *by the Administrative Agent* according to the following . . ."). The payments made by Amur IV both before, and more likely after, AFC was removed as Administrative Agent might well have violated other provisions of the Credit Agreement. That claim, however, is not pled in Count II or Count VI of the Original Complaint.

not constitute a diversion of Borrower funds from paying Interest in violation of

Sections 7.01(a) or (b).

Based on the foregoing, the Court will enter the proposed implementing order

submitted by Amur.[10]

Very truly yours,

***/s/ Joseph R. Slights III***

---

[10] DI 139, [Proposed] Order Granting Amur's Implementing Order on Proceedings at 2–3 ("AFC breached Section 6.04 of the Credit Agreement through the payment of indemnities for the Operating Company Lawsuits in the amounts of $1,173,473.88, $246,651.57, $246,586.20, and $1,451,298.32, in November 2016, December 2016, January 2017, and February 2017, respectively. Such breaches did not constitute an Event of Default pursuant to Sections 7.01(a) and (b) of the Credit Agreement.").